IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

VICTORIA M. HYNSON

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. TMD 10-175M


MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT


Victoria Hynson  ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. §

405(g) for judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C.§§ 401-433.  Before the Court are Plaintiff's

Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 13) and Defendant's

Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 20).  No hearing is deemed

necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's Motion

for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff filed her application for DIB on April 2, 2003 alleging disability since August 2,

1998 on the basis of degenerative disc disease.  R. at 82-85, 90.  Her claim was denied initially

and on reconsideration.  R. at 68-70, 73-75.  On December 7, 2004, a hearing was held before an

administrative law judge ("ALJ") at which Plaintiff and a Vocational Expert ("VE") testified.  R.

at 37-64. Plaintiff was represented by counsel. In a decision dated March 10, 2005, the ALJ denied Plaintiff's request for benefits. R. at 11-23. The Appeals Council denied review and Plaintiff appealed to this Court. The Court remanded the matter on June 8, 2006. R. at 541.

The Appeals Council then remanded the matter for further proceedings and a new hearing was held on January 5, 2007. R. at 655-71. In a decision dated May 17, 2007, the ALJ again found that Plaintiff was not disabled. R. at 474-88. The Appeals Council denied review rendering that decision the final decision subject to judicial review. R. at 467-70.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. § 1520. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairment: lumbar spine degenerative disc disease. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff could perform her past relevant work as an accounts receivable/payable clerk. R. at 474-88.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

## IV. Discussion

Plaintiff contends that (1) the ALJ improperly relied on the opinion of the consultative examiner; (2) the ALJ improperly disregarded the opinions of the treating physicians; and (3) the ALJ failed to properly evaluate Claimant's obesity. The Court will address the first two issues together.

### A.    Consultative Examiner and Treating Physicians

Plaintiff argues that the ALJ incorrectly relied on the opinion of a consultative examiner, Dr. Jenson, to deny benefits. Plaintiff asserts that Dr. Jensen saw Claimant only once on February 7, 2005 -- two years after her date last insured of March 31, 2003 and that Dr. Jensen had very few medical records upon which to base his opinion. Plaintiff further argues that the ALJ should have afforded more weight to the opinions of Claimant's treating physicians, Dr. Sides and Dr. Davis.

Both Dr. Sides and Dr. Davis opined that Claimant be restricted to no full-time sustained work due to limitations in carrying/lifting, sitting, standing and walking. R. at 447-52, 286. As stated in *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992), "[a]lthough the treating physician rule generally requires a court to accord greater weight to the testimony of the treating physician, the rule does not require that the testimony be given controlling weight." Rather, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996). Here, the ALJ indicated that he could not fully accept these opinions regarding Claimant's limitations through the date last insured "as they are not supported by relevant medical evidence and are inconsistent with the record as a whole, including the claimant's lack of consistent medical treatment through the date last insured, contemporaneous treatment records demonstrating normal neurological findings on repeated examinations, objective studies showing a solid fusion, and self reported activities of daily living . . ." R. at 486. Indeed, in support of this rationale, the ALJ thoroughly reviewed the medical evidence in the record and, as discussed below, the Court finds that her decision to not afford the opinions of Dr. Sides and Dr. Davis controlling weight is supported by substantial evidence.

First, the ALJ noted that Dr. Davis' and Dr. Sides' assessments were dated November, 2004 and that there was no indication that the assessments related back to the period on or before the date last insured. This is significant because the ALJ herself recognized a deterioration in Plaintiff's condition after her date last insured; R. at 484, however, a claimant

4

must show that he became disabled on or before the date his insured status expired, or DLI (here, insured of March 31, 2003, R. at 480), in order to be eligible for benefits. *See Barraza v. Barnhart,* 61 Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003).

The ALJ also noted that the opinions of Dr. Davis and Dr. Sides were not supported by relevant medical evidence. In support of his opinion, Dr. Davis referenced generally only "back and leg pain", R. at 447-49, while Dr. Sides provided that his assessment was based on Claimant's pain aggravated by lifting, carrying, standing, walking and sitting and this was "consistent with lumbar disc disease." R. at 450-52. Neither treating physician provided any more by way of explanation. By contrast, consultative examiner, Dr. Jensen, in fact, performed a full examination and provided detailed findings to support his assessment.[1] For example, in support of his opinion, he noted that her cervical spine showed normal forward flexion, lateral flexion bilaterally and extension. R. at 456. He noted straight leg testing normal to 80 degrees bilaterally and then some pain. *Id.* He noted lateral flexion was 30 degrees to the right and 20 degrees to the left and extension was normal. *Id.* Dr. Jensen specifically noted a "discordance" between the results of imaging studies and the severity of Claimant's symptoms. He noted no problems with respect to pain while sitting. R. at 457. He did acknowledge that Claimant would experience some difficulties in standing or walking for prolonged periods of time or long distances based on the post operative changes in her back and deconditioning status. *Id.* Dr. Jensen also noted restrictions with respect to lifting and carrying on a frequent or repetitive

---

[1] It did not go unnoticed by the ALJ that Dr. Jensens's report was also dated approximately 2 years after Claimant's DLI. R. at 487. While there was no indication by Dr. Jensen that the assessment related to the period before the

basis, especially with objects weighing more than 15 pounds. *Id.* Dr. Jensen noted that in addition to his examination findings, he relied extensively on the medical records he had. R. at 458. Clearly, Dr. Jensen's assessment was more supported than those by Dr. Sides or Davis.[2] Dr. Jensen fully considered Claimant's chronic pain syndrome, long term-use of high dose opiates and status post multiple lower back surgeries and her obesity. R. at 460. He discussed in detail her surgeries, R. at 454-55, as well as a plethora of other medical evidence including an MRI and CT scan from 2004. *Id.*

The ALJ also cited the medical findings of orthopedic surgeon, Dr. Faust, to support his opinion. Dr. Faust reported in January, 2001 that Claimant reported she could walk half a mile on her treadmill. R. at 484, 287. Despite complaints of pain, Dr. Faust noted "continued but improved mechanical low back pain." R. at 287. He recommended her to lose weight, begin physical therapy and follow up in three months. *Id.* On April 18, 2001, Claimant continued to complain of back pain but Dr. Faust noted good mobility and that she was neurologically intact. R. at 286, 484. In addition, new x-rays demonstrated a solid fusion. *Id.* Follow up in September, 2001 revealed continued pain but that Claimant had not lost weight nor begun physical therapy as recommended. R. at 484, 285. The ALJ noted that after the September 2000 fusion, progress notes from Shore Clinical Foundation documented only intermittent complaints of low back pain and mostly routine medical care. R. at 301-21, 484. *See, e.g.*. R. at 318 (Claimant complaining of respiratory and infection symptoms in February, 2001); R. at 313

---

DLI, the ALJ found that the opinions expressed therein to be consistent with the record evidence from that relevant time period. *Id.*

(complaining of sinus pain, cough, etc.); *see also* R. at 305, 484 (March, 2003 report indicating complaints of pain but no weakness and intact strength and reflexes). Significantly, the ALJ noted that Claimant did not consult a pain specialist until March, 2004 – nearly one year after her DLI. R. at 433-35, 485.

The ALJ also considered claimant's activities of daily living noting that she reported performing a variety of household activities in April, 2003 – shortly after her DLI. These included helping her daughter get ready for school, preparing meals, some vacuuming, dusting, laundry, shopping and walking to the bus stop. R. at 187-92, 486 The ALJ found that these activities were not consistent with the opinions of Dr. Davis and Dr. Sides that Claimant was unable to stand, walk or sit for longer than one hour in an eight-hour workday and could only lift a maximum of five pounds. R. at 447-52, 486-87. Based on the discussion above, the Court finds that the ALJ did not err by applying greater weight to the opinion of Dr. Jensen than those of Dr. Sides and Dr. Davis.

     B.     <u>Obesity</u>

Finally, Plaintiff contends that the ALJ failed to consider Claimant's obesity. The Court disagrees. As discussed above, the ALJ afforded great weight to the opinion of consultative examiner, Dr. Jensen, who specifically noted that Claimant suffered from obesity and that this condition affected her ability to perform exertional limitations. R. at 459-60. The ALJ recognized Dr. Jensen's impression which included obesity. R. at 481. Although it would have

---

[2] The Court also notes that Dr. Davis did not treat or examine claimant prior to her DLI but appears to have begun treatment in September, 2003. R. at 407-08.

been helpful for the ALJ to include a more detailed discussion regarding Claimant's obesity, the Court finds that any error was harmless as his adoption of virtually all of Dr. Jensen's limitations demonstrates sufficient consideration. *See Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir. 2005) ("Because her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition."); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006) (the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity.").

V.  Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED.  A separate order shall issue.


Date: June 2, 2011                              _____/s/_____
                                                THOMAS M. DIGIROLAMO
                                                United States Magistrate Judge


Copies to:
W. James Nicoll
Jenkins Block & Associates, PC
The Symphony Center
1040 Park Avenue
Suite 206

Baltimore, MD 21201

Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692